1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMJEET SINGH, | ) 1:12-cv-915  AWI GSA |
| | ) |
| **Plaintiff**, | ) **ORDER ON DEFENDANTS'** |
| v. | ) **MOTION TO DISMISS OR** |
| | ) **FOR SUMMARY JUDGMENT** |
| JANET NAPOLITANO, Secretary of | ) **AND ORDER ON** |
| Homeland Security, et al., | ) **PLAINTIFF'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| **Defendants.** | ) |
| | ) (Doc. Nos. 12, 16) |

This is an immigration case.  Plaintiff Armjeet Singh ("Singh") has filed suit in this Court and seeks relief pursuant to 28 U.S.C. §§ 1331, 1361, and 1651 and 5 U.S.C. § 701 et seq. Specifically, Singh seeks to compel Defendants, who are all officials of the United States Government, to adjudicate Singh's I-485 application for an adjustment of his immigration status. Defendants have filed motions to dismiss under Rules 12(b)(1) and 12(b)(6), as well as a motion for summary judgment.  Plaintiff has filed a motion for summary judgment.  For the reasons that follow, Plaintiffs' motion will be denied, Defendants' motions to dismiss will be denied, Defendants' motion for summary judgment will be granted, and this case will close.

## BACKGROUND[1]

Singh, who is a native and citizen of India, resides in this judicial district and is applying for lawful permanent residence in the United States.  See PUMF 1; DUMF 1.  Prior to April 15, 2002, Singh filed a petition pursuant to 8 U.S.C. § 1158(a) seeking asylum in the United States

---

[1]"DUMF" refers to "Defendants' Undisputed Material Fact" and "PUMF" refers to "Plaintiffs' Undisputed Material Fact."

1   for persecution suffered in India.  PUMF 2.  On April 1, 2002, an Immigration Judge ("IJ")

2   issued a decision that denied Singh's Application for Asylum.  PUMF 3.  On October 28, 2003,

3   the Board of Immigration Appeals ("BIA") denied Singh's appeal by affirming the IJ's decision.

4   PUMF 4.

5           On May 23, 2005, the Ninth Circuit Court of Appeals found error and remanded the

6   matter for further proceedings.  See Singh v. Gonzales, 133 Fed. Appx. 399, 401 (9th Cir. 2005).

7           On March 12, 2007, the IJ approved Singh's Application for Asylum.  See DUMF 2;

8   PUMF 8.  The Government waived its right to appeal the IJ's grant of asylum.  See PUMF 8.

9           On June 10, 2008, Singh filed an I-485 application for adjustment of status with

10  Defendant United States Citizenship and Immigration Services ("USCIS") seeking to adjust his

11  status to lawful permanent resident.  DUMF 3.  Singh's I-485 application remains pending with

12  USCIS.  DUMF 4.  The Federal Bureau of Investigation has completed Singh's name and

13  background checks, and background and security checks are not causing the delay in adjudicating

14  Singh's I-485 application.  DUMF 6.  Singh's I-485 application remains pending based upon

15  USCIS's finding that he is inadmissible for engaging in terrorist activities, as defined by the

16  Immigration and Nationality Act, as amended, 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd).[2]  DUMF 5.[3]

17  Singh's asylum claim indicated that he was a supporter of, and provided food and shelter to

18  members of, the militant group Khalistan Commando Force ("KCF") from June 1993 to late

19  1996.  DUMF 7.[4]  Singh's asylum claim also indicated that he knew his grandfather was aiding

20  members of the KCF since the early 1990's, and that Singh had been at his grandfather's home

21

22      [2]That section defines the phrase "engage in terrorist activity" to include: "[committing] an act that the actor

23  knows, or reasonably should know, affords material support, including a safe house, transportation, communications,
    funds, transfer of funds or other material financial benefit, false documentation or identification, weapons . . .,

24  explosives or training – to a terrorist organization described in clause (iv)(III), or to any member of such an
    organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and

25  should not reasonably have known, that the organization was a terrorist organization."

26      [3]Singh disputes this DUMF by stating that the Ninth Circuit has already adjudicated that Singh was not a
    terrorist and did not aid or assist terrorists.  However, this objection does not challenge the reason why Singh's

27  application remains pending.  Therefore, DUMF 5 is undisputed.

28      [4]Singh disputes this DUMF by stating that the Ninth Circuit has already adjudicated that he did not give aid
    or assistance to terrorists, but instead the acts were imputed to him.  However, this objection does not dispute
    whether Singh's asylum claim indicated that he supported the KCF.  Therefore, DUMF 7 is undisputed.

when KCF militants used the house for shelter.  DUMF 8.  However, Singh has never admitted to

being in his grandfather's house with known KCF members.  See Response to DUMF 8.  USCIS

has concluded that the violent activities and objectives of the KCF bring the group within the

definition of an undesignated terrorist organization, commonly referred to as a "Tier III"

organization, as described in 8 U.S.C. § 1182(a)(3)(B)(vi)(III).  DUMF 9.

Singh's I-485 application remains pending adjudication due to the evidence of

inadmissibility and the fact that, in the years since Singh was granted asylum, Congress passed

legislation that affects the adjudication of his application.  DUMF 10.  This legislation includes

the REAL ID Act of May 2005, which inter alia amended the definition of the phrase "engage in

terrorist activity," and expanded on the "material support" grounds and definition of "terrorist

organization."  See DUMF 11.  The legislation also includes the Consolidated Appropriations

Act of 2008 ("CAA") (codified in part at 8 U.S.C. § 1182(d)(3)(B)(i)), which inter alia amended

the Secretary of Homeland Security's ("the Secretary") authority to exempt certain terrorist-

related inadmissibility grounds.  See id.  Specifically, the Secretary, in consultation with the

Secretary of State and the Attorney General, has discretionary authority to exempt certain Tier III

groups or individuals when appropriate.  DUMF 12.  A series of USCIS policy memoranda

("Policy Memoranda") set forth procedures for holding and processing applications that may

potentially benefit from such exemption authority.  Id.  To date, the KCF is not included on the

current list of exempted groups.  Id.

The adjudication of Singh's I-485 is currently being withheld in accordance with agency

policy pending future exemption-related guidance.  DUMF 14.  According to USCIS, if it were

ordered to complete the adjudication of Singh's application, his application would likely be

denied without prejudice to permit him an opportunity to re-file.  See id.  There are no other

impediments to the government deciding the I-485 application.  PUMF 13.

Singh has been granted several work permits and travel documents.  DUMF 15.  Singh's

most recent and current work permit is valid through May 10, 2013.  Id.  Singh's most recent

travel authorization expired on April 10, 2009.  Id.  There is nothing to indicate that, if Singh

applies for either work or travel authorization in the future, his applications will be denied.  Id.

1    Since the Ninth Circuit's opinion in May 2005, the Government has presented no new or
2    supplemental evidence that shows Singh personally aided or assisted terrorists, or that would
3    change Singh's eligibility for an adjustment of status.  See PUMF 9.

4

5                                    **PARTIES' MOTIONS**

6    **I.    Defendants' Rule 12(b)(1) Motion To Dismiss**

7    *Defendants' Argument*

8    Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) divests the Court of jurisdiction to
9    review USCIS's discretionary decision to place Singh's I-485 application on adjudicatory hold.
10   That section strips the Court of the ability to review discretionary decisions in the immigration
11   context.  8 U.S.C. § 1159 governs adjustment of status for asylees, and § 1159(b) expressly
12   grants discretion to the Secretary to adjust an asylee's status.  This is not a case where adjustment
13   is delayed due to a failure to act, but is instead a delay due to USCIS's affirmative and
14   discretionary decision to put Singh's adjustment application on an adjudicatory hold pending a
15   potential exemption.  The decision to hold the application in abeyance is action, and a review of
16   that action would entail a prohibited review of an exercise of discretion.

17   *Plaintiff's Opposition*

18   In a supplemental response, Singh cites *Ahrary v. Curda*, 2012 U.S. Dist. LEXIS 143504
19   (E.D. Cal. Oct. 3, 3012), and argues that the Court may compel action by the Government in
20   adjudicating the I-485 petition.  Otherwise, Singh has not responded to Defendants' argument.

21   *Legal Framework*

22   It is a fundamental precept that federal courts are courts of limited jurisdiction.  Vacek v.
23   United States Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006).  "It is presumed that a cause lies
24   outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party
25   asserting jurisdiction."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Vacek,
26   447 F.3d at 1250.  Federal Rules of Civil Procedure 12(b)(1) allows for a motion to dismiss
27   based on lack of subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  Rule 12(b)(1)
28   motions may be either facial, where the inquiry is confined to the allegations in the complaint, or

                                            4

1   factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  Wolfe

2   v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Safe Air For Everyone v. Meyer, 373 F.3d

3   1035, 1039 (9th Cir. 2004); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d

4   1036, 1040 n.2 (9th Cir. 2003); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  When a

5   defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed

6   true, and the question for the court is whether the lack of federal jurisdiction appears from the

7   face of the pleading itself.  See Wolfe, 392 F.3d at 362; see also Meyer, 373 F.3d at 1039.  When

8   a defendant makes a factual challenge "by presenting affidavits or other evidence properly

9   brought before the court, the party opposing the motion must furnish affidavits or other evidence

10  necessary to satisfy its burden of establishing subject matter jurisdiction."  Meyer, 373 F.3d at

11  1039; Savage, 343 F.3d at 1039 n.2.  The court need not presume the truthfulness of the

12  plaintiff's allegations under a factual attack.  Meyer, 373 F.3d at 1039; White, 227 F.3d at 1242.

13          *Discussion*

14          8 U.S.C. § 1252(a)(2)(B)(ii) provides in part that no court shall have jurisdiction to

15  review any "decisions or action of the . . . Secretary of Homeland Security the authority for

16  which is specified under this title to be in the discretion of the . . . Secretary of Homeland

17  Security . . . ."  There is a split among the district courts as to whether § 1252(a)(2)(B)(ii) strips

18  courts of jurisdiction to compel action on I-485 applications that are being held in abeyance

19  pursuant to the Policy Memoranda regarding Tier III terrorist organizations.  Khalfallah v.

20  Holder, 2011 U.S. Dist. LEXIS 119366, *9-*10 (N.D. Tex. Sept. 9, 2011).  Some courts hold

21  that review is not permitted pursuant to § 1252(a)(2)(B)(ii) because the decision to hold an

22  application in abeyance is a discretionary decision or action by the USCIS.  E.g. Nuredini v.

23  Napolitano, 2012 U.S. Dist. LEXIS 87923, *8-*9 (N.D. Ill. June 26, 2012); Alghadbawi v.

24  Napolitano, 2011 U.S. Dist. LEXIS 106355, *8-*9 (S.D. Ind. Sept. 19, 2011); Khalfallah, 2011

25  U.S. Dist. LEXIS 119366 at *10; Seydi v. United States Citizenship & Immigration Servs., 779

26  F.Supp.2d 714, 719 (E.D. Mich. 2011); Singh v. Napolitano, 710 F.Supp.2d 123, 131-32 (D.

27  D.C. 2010).  Other courts reason that, even considering the Policy Memoranda, there is a non-

28  discretionary mandatory duty to act on an I-485 application, and there is no discretion to

1  indefinitely withhold a ruling on an I-485.  E.g. Irshad v. Napolitano, 2012 U.S. Dist. LEXIS

2  142459, *16-*18 (D. Neb. Oct. 2, 2012); Beyene v. Napolitano, 2012 U.S. Dist. LEXIS 97751,

3  *7-*9 (N.D. Cal. July 13, 2012); Tewolde v. Wiles, 2012 U.S. Dist. LEXIS 30197, *9-*10 (W.D.

4  Wash. Mar. 7, 2012); Mugomoke v. Curda, 2012 U.S. Dist. LEXIS 4474, *12-*15 (E.D. Cal.

5  Jan. 12, 2012); Beshir v. Holder, 853 F.Supp.2d 1, 8 (D. D.C. 2011); Al Rifahe v. Mayorkas, 776

6  F.Supp.2d 927, 932 (D. Minn. 2011); Khan v. Scharfen, 2009 U.S. Dist. LEXIS 28948, *11-*15

7  (N.D. Cal. Apr. 6, 2009).

8      After consideration, the Court agrees with and adopts the rationale of the latter cases that

9  § 1252(a)(2)(B)(ii) does divest the it of jurisdiction in this situation.  This Court has jurisdiction

10  to review claims that USCIS has unreasonably delayed a decision on an I-485 application.  See

11  Irshad, 2012 U.S. Dist. LEXIS 142459 at *16-*18; Beyene, 2012 U.S. Dist. LEXIS 97751 at *7-

12  *9; Tewolde, 2012 U.S. Dist. LEXIS 30197 at *9-*10; Mugomoke, 2012 U.S. Dist. LEXIS 4474

13  at *12-*15; Beshir, 853 F.Supp.2d at 8; Al Rifahe, 776 F.Supp.2d at 932; Khan, 2009 U.S. Dist.

14  LEXIS 28948 at *11-*15.  However, as the District of Nebraska has emphasized: "This is not to

15  say that [USCIS] must process I-485 applications in a particular way or within a specific time

16  frame . . . [, and the Court] does not mean to suggest that the USCIS lacks the discretion to hold

17  an application 'in abeyance' [pursuant to the Policy Memoranda] for a reasonable period."

18  Irshad, 2012 U.S. Dist. LEXIS 142459 at *17.  The Court is merely holding that it has the

19  jurisdiction to determine whether a delay in ruling on an I-485 application is reasonable.  See id.

20      Defendants do not make any other arguments that question subject matter jurisdiction.

21  Because § 1252(a)(2)(B)(ii) does not apply, and there appears to be no other basis for doubting

22  the Court's subject matter jurisdiction, Defendants' Rule 12(b)(1) motion will be denied.

23

24  **II.    Defendant's Rule 12(b)(6) Motion To Dismiss**

25  *Defendants' Argument*

26      Defendants argue that the Complaint fails to state a claim under the Administrative

27  Procedure's Act ("APA") because the USCIS's adjudicatory hold actually benefits Singh.  To

28  state a claim under the APA, a plaintiff must allege that the delay caused him prejudice.  Singh is

1  not prejudiced because, but for the hold, USCIS would deny Singh's I-485 application.  Although

2  Singh argues that he is greatly damaged, there are no allegations that show how he is damaged.

3      *Plaintiff's Opposition*

4      Singh does not specifically address Defendants' argument.  Instead, Singh filed a motion

5  for summary judgment.

6      *Legal Framework*

7      Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the

8  plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A

9  dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

10  absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside

11  Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

12  Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

13  taken as true and construed in the light most favorable to the non-moving party.  Marceau v.

14  Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075,

15  1077 (9th Cir. 1999).  However, the Court is not required "to accept as true allegations that are

16  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead

17  Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266

18  F.3d 979, 988 (9th Cir. 2001).  To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain

19  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

20  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544,

21  555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

22  allows the court draw the reasonable inference that the defendant is liable for the misconduct

23  alleged."  Iqbal, 129 S.Ct. at 1949.  In deciding whether to dismiss a claim under Rule 12(b)(6),

24  the Court is generally limited to reviewing only the complaint, but it may take judicial notice of

25  public records outside the pleadings, review materials which are properly submitted as part of the

26  complaint, and review documents that are incorporated by reference in the Complaint if no party

27  questions their authenticity.  See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v.

28  City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

1    *Discussion*

2        In part, the APA permits a reviewing court to "compel agency action unlawfully withheld

3    or unreasonably delayed."  5 U.S.C. § 706(1); Gardner v. United States BLM, 638 F.3d 1217,

4    1221 (9th Cir. 2011).  Section 706(1) "empowers a court only to compel an agency 'to perform a

5    ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it

6    shall act.'"  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004); see Mt. St. Helens

7    Mining & Recovery Ltd. P'ship v. United States, 384 F.3d 721, 728 (9th Cir. 2004).  "[A] claim

8    under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete

9    agency action that it is required to take."  Norton, 542 U.S. at 64; Gardner, 638 F.3d at 1221.

10        The Complaint alleges that, as of June 2012, over 40 months have passed since Singh

11   filed his I-485 application, that Defendants have not acted in accordance with their mandatory

12   duties, that Defendants are unreasonably delaying action on the I-485 application, and that Singh

13   is being denied the opportunity to become a lawful permanent resident and is being greatly

14   damaged.  See Complaint at ¶¶ 8-13.

15        As discussed above, the Court agrees with those district courts that hold that the USCIS

16   has a discrete, mandatory duty to make an adjudication on an I-485 application, and that an

17   adjudication cannot be withheld indefinitely.  See Irshad, 2012 U.S. Dist. LEXIS 142459 at *16-

18   *18; Beyene, 2012 U.S. Dist. LEXIS 97751 at *7-*9; Tewolde, 2012 U.S. Dist. LEXIS 30197 at

19   *9-*10; Mugomoke, 2012 U.S. Dist. LEXIS 4474 at *12-*15; Beshir, 853 F.Supp.2d at 8; Al

20   Rifahe, 776 F.Supp.2d at 932; Khan, 2009 U.S. Dist. LEXIS 28948 at *11-*15.  Because the

21   Complaint alleges that Defendants are unreasonably delaying a mandatory, discrete action to

22   which Sing is entitled, the Complaint states a claim under 5 U.S.C. § 706(1).[5]  See Irshad, 2012

23   U.S. Dist. LEXIS 142459 at *21-*23; Al Sawad v. Mayorkas, 2012 U.S. Dist. LEXIS 110259, *7

24   n.3 (D. Minn. Aug. 7, 2012); Beyene, 2012 U.S. Dist. LEXIS 97751 at *10-*11.  Defendants'

25   motion to dismiss will be denied.

26

27

28        [5]The Court rejects Defendants' argument that Singh has not alleged prejudiced.  Singh has "the right to a
     timely decision on his I-485 application, and the alleged failure to provide him a timely decision deprives him of that
     right, which is all the injury necessary . . . ."  Al Sawad v. Mayorkas, 2012 U.S. Dist. LEXIS 110259, *7 n.3 (D.
     Minn. Aug. 7, 2012); see Irshad, 2012 U.S. Dist. LEXIS 14259 at *21.

1    ### III.    Motions For Summary Judgment

2    *Plaintiff's Arguments*

3    Singh argues that the Ninth Circuit has already evaluated this case and the record.  In

4    2005, the Ninth Circuit adjudicated that Singh was otherwise eligible for asylum under 8 U.S.C.

5    § 1158(a).  The IJ denied asylum because he found that Singh had aided/assisted terrorists in

6    India.  However, the Ninth Circuit reversed this holding "and specifically found that Singh did

7    not personally aid or assist terrorists, but that the actions of others were imputed to him."  Singh

8    was granted asylum pursuant to the Ninth Circuit order, and no appeal was taken by the

9    Government.  Even though there has been no new or additional evidence, the Government has

10   overruled the Ninth Circuit by deciding that Singh is ineligible for adjustment of status because

11   he aided or assisted terrorists.  However, it is well established that neither asylum nor adjustment

12   of status may be denied on the basis of imputed membership in a known terrorist group.

13   As to Defendants' motion, Singh did not file an opposition that addresses Defendants'

14   arguments and analyses.

15   *Defendants' Arguments*

16   Defendants argue that a four year adjudicatory hold pending a potential exemption for a

17   terrorism related inadmissibility ground is reasonable as a matter of law.  A review of the

18   relevant factors for determining whether an agency has unreasonably delayed taking action for

19   purposes of § 706(1) of the APA shows that the four year delay is reasonable.  First, a rule of

20   reason governs the adjudication of Singh's application since the Secretary is implementing the

21   CAA.  Second, Congress has not mandated a time table for the adjudication of I-485

22   applications.  Third, Singh has not been unduly prejudiced by the delay because the delay

23   actually benefits him.  Fourth, expediting the adjudication unduly interferes with USCIS's

24   discretion because it challenges an agency's process for exercises of discretionary exemption

25   authority.  Fifth, USCIS is exercising every effort to address the delay and is not indifferent to

26   Singh's situation.

27   With respect to Singh's motion, Defendants argue that Singh is misconstruing the Ninth

28   Circuit opinion, and that the opinion did not conclude that Singh did not actually aid terrorists.

1    *Legal Framework*

2    Summary judgment is appropriate when it is demonstrated that there exists no genuine

3    issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

4    Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v.

5    American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary

6    judgment bears the initial burden of informing the court of the basis for its motion and of

7    identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an

8    absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

9    Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it

10   might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby,

11   Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).

12   A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to

13   return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v.

14   Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).  The opposing party's evidence is to be

15   believed, and all justifiable inferences that may be drawn from the facts placed before the court

16   must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475

17   U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010).  While a "justifiable

18   inference" need not be the most likely or the most persuasive inference, a "justifiable inference"

19   must be rational or reasonable.  See Narayan, 616 F.3d at 899.  "A genuine issue of material fact

20   does not spring into being simply because a litigant claims that one exists or promises to produce

21   admissible evidence at trial."  Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002);

22   see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).

23   *Discussion*

24   1.    Plaintiff's Motion

25   Singh's motion is based entirely on the premise that the Ninth Circuit has already found

26   that he did not provide aid or assistance to a terrorist organization.  In pertinent part, the Ninth

27   Circuit opinion reads:

28   1. The IJ purported to distinguish *Harpinder Singh* [*v. Ilchert*, 63 F.3d 1501 (9th
     Cir. 1995)] from this case on the sole ground that Petitioner "did, in fact, assist or

10

aid terrorists" whereas *Harpinder Singh* had been "falsely accused" of supporting the separatists. That purported distinction is not availing because Harpinder Singh also assisted or aided Sikh militant separatists. See Harpinder Singh, 63 F.3d at 1503-04 (describing that the petitioner gave food and shelter to Sikh separatist militants seven times, even though he disapproved of their violent methods and declined their requests to join them); see also Ratnam v. INS, 154 F.3d 990, 996 (9th Cir. 1998) (concluding that *Harpinder Singh* was controlling, despite the government's argument that Ratnam was arrested while actually engaged in terrorist activity, because "the actions of Harpinder Singh in harboring the guerrillas in his home" would be considered terrorist activity as well). The IJ pointed to no other distinction from *Harpinder Singh*, and on this record we see none. What happened to Petitioner occurred "on account of an imputed political opinion."

2. The IJ did not consider any other aspects of Petitioner's claims for asylum and withholding of removal, including whether the events rose to the level of past persecution and, if so, whether country conditions have changed. Therefore, we must remand the case to the agency for further proceedings. INS v. Ventura, 537 U.S. 12 (2002).

Singh v. Gonzales, 133 Fed. Appx. 399, 400-01 (9th Cir. 2005) (hereinafter "2005 Opinion").[6]

Singh reads too much into the 2005 Opinion.

As quoted above, the IJ attempted to distinguish *Harpinder Singh* on the basis that that case involved an individual who did not aid or assist terrorists. See id. However, that was a "false distinction" because the Ninth Circuit found that *Harpinder Singh* also involved an individual who did in fact aid or assist terrorists. See id. That is, both Singh's case and *Harpinder Singh* involved findings of aid or assistance to terrorists by the applicants. The Ninth Circuit did not hold that Singh was entitled to asylum because Singh did not actually provide aid or assistance to terrorists. Instead, the Ninth Circuit indicated that *Harpinder Singh* was on point, and then remanded the case for further consideration and proceedings because the IJ's analysis had prematurely ended due to the faulty distinction of *Harpinder Singh*. See id.

As for the language regarding "imputed political opinion," the Ninth Circuit was indicating that there was no apparent distinction between Singh's case and *Harpinder Singh*. See id. In *Harpinder Singh*, the Ninth Circuit held that Harpinder Singh's persecution (which included arrests and beatings by the police) was due to an imputed political opinion that was not actually held by the him. See Harpinder Singh, 63 F.3d at 1509. The police believed that

---

[6]The Ninth Circuit also held that Singh failed to meet his burden on his Convention Against Torture claim because his grandfather and father, who were significantly involved in the Sikh separatist movement, remained in their homes in India without problems. See Singh, 133 Fed. Appx. at 401.

Harpinder Singh was a militant Sikh who was attempting to violently create a separate and independent Sikh state from within India.  See id.  The Ninth Circuit recognized that, even though Harpinder Singh was not a militant Sikh, and because there was no legitimate police criminal prosecution against him, Harpinder Singh's persecution was based on a political opinion that was being imputed to him by the police.  See id. at 1508-09.  The Ninth Circuit held that persecution based on the political opinion imputed to Harpinder Singh by the police was sufficient for asylum purposes.  See id.  With this background, the Ninth Circuit's reference in this case to "imputed political opinion" simply means that the persecution suffered by Singh, i.e. "what happened to [him]," Singh, 133 Fed. Appx. at 401, was based on a political opinion that was imputed to him by his persecutors.

The Ninth Circuit neither expressly nor implicitly held that Singh did not aid or assist terrorists.  In fact, the Ninth Circuit's opinion appears to accept a finding that Singh did in fact aid or assist terrorists.  Because Singh's motion is based on the 2005 Opinion, summary judgment will be denied.

2.      Defendants' Motion

Singh filed his I-485 application on June 10, 2008, and filed this case on June 5, 2012.  See Doc. No. 1; DUMF 3.   Thus, as of the date of this order, Singh has been waiting for an adjudication on his I-485 application for over four years.

In the Ninth Circuit, whether an agency has engaged in an "unreasonable delay" under 5 U.S.C. § 706(1) is determined by reviewing six factors, known as the "TRAC Factors."  Brower v. Evans, 257 F.3d 1058, 1068-69 (9th Cir. 2001); Telecommunications Research & Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984).  The TRAC Factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

1   Brower, 257 F.3d at 1068; TRAC, 750 F.2d at 80.

2          With respect to the first factor, the delay in this case is caused by application of the Policy

3   Memoranda.  As indicated above, the Policy Memoranda directs that the I-485 applications of

4   individuals who aided Tier III terrorist organizations are to be placed on hold, subject to a

5   possible exercise of the Secretary's discretion that would exempt the relevant organization or

6   individual.  See DUMF 12.  Whether an exemption applies or will be granted for individuals who

7   aided or assisted Tier III terrorist organizations is a complex and sensitive decision.  Al Sawad,

8   2012 U.S. Dist. LEXIS 110259 at *10-*11.  The process for reaching an exemption

9   determination requires cooperation between, and evaluation by, no less than three significant

10  federal agencies, and involves consideration of national security, foreign policy, and

11  humanitarian issues.  See id.; Beyene, 2012 U.S. Dist. LEXIS 97751 at *15; Rambang v.

12  Mayorkas, 2012 U.S. Dist. LEXIS 88698, *17 (D. Minn. June 27, 2012).  The determination by

13  its very nature is "time consuming" and not to be made lightly.  Beyene, 2012 U.S. Dist. LEXIS

14  97751 at *15; see also Rambang, 2012 U.S. Dist. LEXIS 88698 at *17.  Further, the process for

15  determining possible exemptions is not a "sham" as new organizations have received

16  exemptions, and thousands of aliens have benefitted from those exemptions.  Al Sawad, 2012

17  U.S. Dist. LEXIS 110259 at *10-*11; Beyene, 2012 U.S. Dist. LEXIS 97751 at *16.

18          However, courts considering the first factor in the context of the Policy Memoranda holds

19  also consider the actual length of delay.  Ahrary v. Curda, 2012 U.S. Dist. LEXIS 143504, *11-

20  *12 (E.D. Cal. Oct. 3, 2012); Qureshi v. Napolitano, 2012 U.S. Dist. LEXIS 90811, *18 (N.D.

21  Cal. June 28, 2012).  Holding an application *indefinitely* in case the Secretary might, at some

22  unknown and unspecified date, consider or approve an exemption does not constitute a rule of

23  reason.  See Beyene, 2012 U.S. Dist. LEXIS 97751 at *18; Mugomoke, 2012 U.S. Dist. LEXIS

24  4474 at *22.  Nevertheless, delays of four years or less have been found to be reasonable.  See

25  Ahrary, 2012 U.S. Dist. LEXIS 143504 at *12; Qureshi, 2012 U.S. Dist. LEXIS 90811 at *13-

26  *14.  There is a split of authority with respect to delays of five years; one case has held the delay

27  to be reasonable, while another has held the delay to be unreasonable.  See Beyene, 2012 U.S.

28  Dist. LEXIS 97751 at *19, *24-*25 (five year delay reasonable) with Qureshi, 2012 U.S. Dist.

1   LEXIS 90811 at *18, *24 (five year delay unreasonable).  Delays of six or more years generally

2   have been found to be unreasonable.  See Ahrary, 2012 U.S. Dist. LEXIS 143504 at *12;

3   Qureshi, 2012 U.S. Dist. LEXIS 90811 at *13-*14.

4          Here, Singh's delay is closer to four years than it is to five.  Singh has not expressly

5   addressed the first *TRAC* Factor, nor does he attempt to distinguish the developing body of case

6   law that finds four year delays to be reasonable.  Considering the complex and extremely

7   sensitive nature of the process for determining exemptions, the Court finds that the

8   approximately four year delay in this case is reflective of a rule of reason.  The first *TRAC* Factor

9   weighs in favor of Defendants.

10          With respect to the second factor, there is no applicable timetable that has been set by

11   Congress, nor is there an indication that Congress intended that I-485 applications such as

12   Singh's are to be adjudicated within a particular period of time.  As such, Defendants are only

13   required to process Singh's application within a reasonable time.  See Rambang, 2012 U.S. Dist.

14   LEXIS 88698 at *17; Tewolde, 2012 U.S. Dist. LEXIS 30197 at *16.  The second *TRAC* Factor

15   weighs in favor of Defendants.

16          With respect to the third factor, this case does not involve an economic regulation.

17   Instead, this case involves humanitarian concerns because Singh is an asylee who is attempting to

18   become a lawful permanent resident.  The Court finds that the third *TRAC* Factor weighs in

19   Singh's favor.  See Irshad, 2012 U.S. Dist. LEXIS 142459 at *40; Al Sawad, 2012 U.S. Dist.

20   LEXIS 110259 at *9.

21          With respect to the fourth factor, Defendants state that compelling action would interfere

22   with USCIS's discretion, that this lawsuit directly challenges the agency's process for exercising

23   its discretion, and that compelling action would truncate consideration of possible exemptions.

24   Singh does not address or challenge this contention.  Defendants have discretion on whether to

25   grant or deny I-485 applications, and they certainly may establish internal procedures to facilitate

26   the adjudication of applications, especially applications that involve Tier III terrorist

27   organizations and are subject to the Policy Memoranda.  As discussed above, the approximately

28   four year delay in adjudicating Singh's application is reasonable and reflects a rule of reason.

1  Given that the four year delay appears to be reasonable, compelling agency action at this time

2  would unduly interfere with agency priorities and processes.  The fourth *TRAC* Factor weighs in

3  favor of Defendants.[7]  See Al Sawad, 2012 U.S. Dist. LEXIS 110259 at *9-*12; Beyene, 2012

4  U.S. Dist. LEXIS 97751 at *23.

5          With respect to the fifth factor, Singh has not identified which of his interests are being

6  harmed.  Some courts have found, based on the evidence presented to them, that an adverse

7  effect on a plaintiff's ability to travel, work, accrue naturalization credits, and a desire to obtain

8  an adjudication despite a likely denial, are all considerations that may show injury to a plaintiff's

9  interests.  See Tewolde 2012 U.S. Dist. LEXIS 30197 at*22; Mugomoke, 2012 U.S. Dist. LEXIS

10  4474 at *25.  However, Defendants have submitted evidence that Singh's work permit does not

11  expire until May 2013, that Singh's most recent travel authorization expired in April 2010, and

12  that there is nothing to indicate that Singh would be denied additional work and travel

13  authorization if he were to submit applications.  Further, Singh's desire to compel a ruling

14  appears to be largely based on a particular interpretation of the 2005 Opinion.  However, as

15  discussed above, Singh's interpretation of the 2005 Opinion is not one with which this Court

16  agrees.  Without acceptance of a more favorable interpretation of the 2005 Opinion, it is unclear

17  whether Singh would still seek to compel Defendants to act.  In the absence of any arguments or

18  evidence by Singh, the fifth *TRAC* Factor weighs in favor of Defendants.

19          With respect to the sixth factor, there is no evidence of impropriety or bad faith by

20  Defendants.  The indication is that the hold placed on Singh's application is part of a genuine

21  attempt to aid applicants like Singh who could possibly benefit from an exercise of the

22  Secretary's discretion, as provided by the CAA.  Singh's papers could be read as contending that

23  Defendants are acting in bad faith because the 2005 Opinion precludes a finding that he aided

24  terrorists.  However, as explained above, the Court does not agree with Singh's interpretation of

25  the 2005 Opinion.  The sixth *TRAC* Factor weighs in favor of Defendants.

26

27          [7]The four year delay is a key consideration for the Court in evaluating this factor.  If a longer delay were
     involved, this factor would likely weigh against Defendants because there is no discretion to withhold a decision
28  indefinitely.  See Ahrary, 2012 U.S. Dist. LEXIS 143504 at *17; Tewolde, 2012 U.S. Dist. LEXIS 30197 at *25-
     *26.

1    In sum, *TRAC* Factors one, two, four, five, and six favor Defendants.  *TRAC* Factor three

2  favors Plaintiff.  Because five of the six *TRAC* Factors favor Defendants, the Court concludes

3  that the approximately four year delay in processing Plaintiff's I-485 application is "reasonable."

4  In the absence of an "unreasonable delay," it is not appropriate for the Court to compel

5  Defendants to adjudicate Singh's I-485 application at this time.  Defendants' motion for

6  summary judgment will be granted.[8]  See Al Sawad, 2012 U.S. Dist. LEXIS 110259 at *17-*18;

7  Beyene, 2012 U.S. Dist. LEXIS 97751 at *25.

8

9                                 **CONCLUSION**

10   As to Singh's motion for summary judgment, that motion is based on a particular

11 interpretation of the 2005 Opinion.  However, the Court disagrees with Singh's interpretation.

12 The 2005 Opinion does not hold that Singh did not aid or assist a terrorist organization, rather,

13 the 2005 Opinion remanded Singh's case to the IJ because the IJ had improperly distinguished

14 controlling case authority.  Singh's motion for summary judgment is denied.

15   As to Defendants' Rule 12(b)(1) motion, there is a split of authority over whether 8

16 U.S.C. § 1252(a)(2)(B)(ii) divests the Court of jurisdiction to compel agency action.  This Court

17 agrees with what appears to be the majority position, and holds that 8 U.S.C. § 1252(a)(2)(B)(ii)

18 does not divest it of jurisdiction.  Therefore, Defendants' Rule 12(b)(1) motion is denied.

19   As to Defendants' Rule 12(b)(6) motion, Singh has alleged that Defendants are

20 unreasonably delaying an adjudication of his I-485 application, despite a mandatory obligation to

21 make an adjudication.  Singh has sufficiently alleged a claim under 5 U.S.C. § 706(1).

22 Therefore, Defendants' Rule 12(b)(6) motion is denied.

23   Finally, as to Defendants' motion for summary judgment, the *TRAC* Factors show that the

24 approximately four year delay in adjudicating Singh's I-485 application is "reasonable."  Without

25 an "unreasonable delay," there is no basis to compel the Defendants to adjudicate Singh's

26 application.  Thus, Defendants' motion for summary judgment is granted and this case will close.

27

28

---

[8]The analysis and outcome for Singh's mandamus claims is the same as Singh's APA claim.  See Qureshi, 2012 U.S. Dist. LEXIS 90811 at *11 n.3.

16

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment is DENIED;

2.    Defendants' Rule 12(b)(1) motion to dismiss is DENIED;

3.    Defendants' Rule 12(b)(6) motion to dismiss is DENIED;

4.    Defendants' motion for summary judgment is GRANTED;[9] and

5.    The Clerk shall enter judgment in favor of Defendants and CLOSE this case.


IT IS SO ORDERED.


Dated:    November 9, 2012                                                                            _____
                                                                                            UNITED STATES DISTRICT JUDGE

---

[9]The summary judgment motion is granted without prejudice to Plaintiff bringing a new action in the future based on a continuing and longer delay. See Beyene, 2012 U.S. Dist. LEXIS 97751 at *25.

17